UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**ROBERT ALLEN**                                                    **CIVIL ACTION NO.**

                                                                    **15CV 04347**

                              Plaintiff,

              -*against*-                                            **SECOND AMENDED**
                                                                    **COMPLAINT**

THE CITY OF NEW YORK, COMMISSIONER JOSEPH PONTE
NEW YORK CITY DEPARTMENT OF CORRECTIONS,
YOLANDA CANTY WARDEN OF GEORGE R. VIERNO CENTER (GRVC),
CAPTAIN NAUGHTON, SHIELD # 257,
CAPTAIN SAMANTHA MARROW # 356,
CORRECTION OFFICER HERNANDEZ, SHIELD #9313,
CORRECTION OFFICER PAIGE, SHIELD # 15027,
CORRECTION OFFICER CALABRESE SHIELD # 15056,
CORRECTION OFFICER PARRIS SHIELD #3437, AND OTHER
UNIDENTIFIED CORRECTIONS OFFICERS JOHN DOE
AND JANE DOE (1-5), INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITY
                                            Defendants
-------------------------------------------------------------------X

       The plaintiff, ROBERT ALLEN, complaining of the defendant(s), by his attorney EDWARD

ZALOBA, ESQ., respectfully shows to this Court and alleges:


## JURISDICTION

1.      Jurisdiction is founded upon the existence of a Federal Question.

2.      This is an action to redress the deprivation under color of statute, ordinance, regulation,

custom, or usage of rights, privileges, and immunities secured to plaintiff by the Fourth, Eighth and

Fourteenth Amendments to the Constitution of the United States pursuant to U.S.C. §1983.

3.      Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343 (3 & 4).

4.      Venue is appropriate pursuant to 28 U.S.C. Sections 1391(a)(b)(c) (1 & 2).

5.      That this Court has jurisdiction to hear plaintiff's state claims pursuant to 28 U.S.C.

Section 1367.

## JURY TRIAL DEMANDED

6.     Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

7.     At all times relevant hereto, plaintiff ROBERT ALLEN, was and is a citizen of the United States and  was and is a resident of  Queens County, New York State.

8.     That at all times hereinafter mentioned, defendant CITY OF NEW YORK (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.     At all times relevant hereto, defendant NEW YORK CITY was and is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Department of Correction.

10.     That at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY DEPARTMENT OF CORRECTIONS, including Commissioner, all the corrections officers, and Wardens thereof.

11.     Defendant, Commissioner Joseph Ponte, is and was at all times relevant herein duly appointed Commissioner of the New York City Department of Corrections, a municipal agency of defendant City of New York.

12.     The defendant, YOLANDA CANTY, Warden of the George R. Vierno Center (GRVC), Department of Corrections, for the City of New York is and was at all times relevant herein duly appointed and acting officer, warden, servant, employee and agent of the New York City Department of Corrections, a municipal agency of defendant City of New York

13.     Defendants Commissioner Ponte, Warden Canty, Captain Marrow, Captain Naughton,

Correction Officer Hernandez, Correction Officer Paige, Correction Officer Calabrese, and Correction Officer Parris, and all unidentified Correction Officers John and Jane Does (1-5), are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Department of Corrections, a municipal agency of defendant CITY OF NEW YORK.

14.     Defendants Commissioner Ponte, Warden Canty, Captain Marrow, Captain Naughton, Correction Officer Hernandez, Correction Officer Paige, Correction Officer Calabrese and Correction Officer Parris, and all Correction Officers John and Jane Does (1-5), are and were at all times relevant herein acting under the direction and control of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, and were acting pursuant to either official policy, or the custom, practice and usage of the New York City Department of Correction and acting under color of State Law, a municipal agency of defendant CITY OF NEW YORK.

15.     That at all times relevant Defendants Commissioner Ponte, Warden Canty, Captain Marrow, Captain Naughton, Correction Officer Hernandez, Correction Officer Paige, Correction Officer Calabrese and Corrections Officer Parris, and all John and Jane Does (1-5), of various ranks, were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

16.     Defendants Commissioner Ponte, Warden Canty, Captain Marrow, Captain Naughton, Correction Officer Hernandez, Correction Officer Paige, Correction Officer Calabrese and Correction Officer Parris and Corrections Officers John and Jane Does (1-5) are sued individually and in their official capacities.

17.     Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a correction department which acts as its agent in the area of detention and corrections, including the Rikers Island Correctional Facility, and for which it is ultimately responsible.  Defendant

CITY OF NEW YORK assumes the risks incidental to the maintenance of a corrections department and the employment of corrections officers and employees as said risk attaches to the public consumers of the services provided by members of the New York City Department of Correction.

18.    At all times relevant herein, the defendants Commissioner Ponte, Warden Yolanda Canty, Correction Captain Marrow, Captain Naughton, Correction Officer Parris, Correction Officer Hernandez, Correction Officer Paige, Correction Officer Calabrese and all JOHN and JANE DOES were acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York, and the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, and were acting in the course and scope of their duties and functions as officers, agents, servants, and employees of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  At all times relevant herein, they were acting for and on behalf of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, with the power and authority vested in them as officers, agents, servants and employees of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK.

## <u>NOTICE OF CLAIM</u>

19.    That on or about October 31, 2014 a Notice of Claim was served on the Comptroller of the City of New York setting forth the time, place manner in which said claims arose.

20.    A 50H hearing was conducted of Plaintiff ROBERT ALLEN, on February 17, 2015.

21.    That more than thirty (30) days have elapsed since the Notice of Claim has been served upon the defendant and the said defendants have neglected or refused to make any adjustments or payments thereof.

22.     That this action is commenced within one (1) year and ninety days after the causes of action arose and other causes of actions within three (3) years when said action arose.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

23.     At all times relevant herein, on May 20, 2014 and thereafter, Plaintiff was a 30 year old incarcerated pretrial detainee in the custody of the New York City Department of Corrections.

24.     Upon plaintiff's entry into the New York City Department of Corrections, (hereinafter DOC) the plaintiff was assessed and interviewed in order to be classified with a view towards plaintiff being properly placed within the Department of Corrections.

25.     The Defendants Correction Officers Calabrese, Paige and other unidentified corrections officers from Department of Corrections classifications unit determined and noted that the Plaintiff was DSM IV, learning disabled and had been a special education student.

26.     That this was plaintiff's first arrest.

27.     That the plaintiff instant arrest for a sex offense involving a minor.

28.     That defendants Corrections Officers Paige, Calabrese and other unidentified corrections officers from Department of Corrections from said classification unit were aware of the above factors.

29.     On or about May 20, 2014, the plaintiff was brought to the Vernon C. Bain Center to be lodged.

30.     That on plaintiff's first evening at said facility, he requested from Captain Naughton, that he be placed in protective custody - this request was denied.

31.     That the Plaintiff was subsequently transferred to Department of Corrections Rikers Island facility and placed in the George R. Vierno Center in the general population (hereinafter GRVC).

32.     That plaintiff's attorney had called the Department of Corrections on a number of occasions (5/20/14, 7/2/14) requesting that plaintiff be placed in protective custody - these requests were not acted upon by Department of Corrections defendant officers John and Jane Does.

33. That the defendants Calabrese, Paige and unknown other correction officers from the classification unit and personnel failed to reclassify plaintiff upon his transfer from VCBC to GRVC .

34. That the defendants Calabrese, Paige and the unknown corrections officer failed to reclassify plaintiff as required by Department of Corrections Rules and Regulation within 60 days from his initial incarceration.

35. That on and before August 12, 2014, at approximately 8:15 a.m., the plaintiff was classified as a minimum security prisoner with a level 6 .

36. That plaintiff was housed in general population in GRVC with maximum security inmates.

37. That plaintiff's placement with maximum security inmates is a violation of one of the most significant rules of Department of Corrections.

38. That defendant placement as stated above is also in conflict with the requirements of the New York State Minimum Standards for Protecting Prisoners as well as basic penalogical principals.

39. That defendants Calbrese, Paige and unidentified other correction officers in the Department of Correction's classifications unit caused plaintiff to be improperly placed at said facility.

40. That due to the defendants and unidentified corrections officer's failure to monitor plaintiff in accordance with the Department of Corrections Rules and Regulations, the defendant was caused to be placed in great danger.

41. That given the above known facts of plaintiff, it was clear that he was a vulnerable inmate and recklessly placed in great danger.

42. That on and before August 12, 2014, at approximately 8:15 a.m., the plaintiff was at GRVC – in the dining area when another inmate called plaintiff up a number of steps and started screaming at him in a menacing manner.

43. That said inmate struck the plaintiff twice on the left side of his face in an unprovoked

attack.

44.     Upon information and belief, said assailant "BeyBey" was a known bloods gang member.

45.     The defendant Correction Officer Hernandez was missing from his post during said assault and battery of plaintiff.

46.     That defendant Hernandez absence from his post violated New York State Minimum Standards for Protecting Prisoners where said defendant was unable to provide "active supervision" where he was not able to have immediate availability of correction officer to prisoner which place the prisoner, plaintiff, in great jeopardy and harm.

47.     That correction officer Defendant Parris observed said assault from the bubble

48.     That defendant Parris in his bubble did not offer or assist the plaintiff.

49.     On August 12, 2014, in GRVC there was no video surveillance of either the dining or bedding areas.

50.     The failure to have video surveillance in such common areas as the dining and bedding areas is not only contrary to common sense but also violates New York State Minimum Standards for Protecting Prisoners as well as basic Penalogial principals.

51.     The defendant including the defendants Ponte and Canty were well aware of the exceptionally high incidents of inmate on inmate violence in GRVC prior to the assault of plaintiff.

52.     In fact defendants Ponte and Canty were aware of the exceptionally high incidents of prior inmate on inmate assault and battery in GRVC in the prior years.

53.     That defendants Ponte and Canty were well aware of the lack of video surveillance at GRVC especially in the common area which are well known to be areas where high incidents of violence have occurred.

54.     That the plaintiff was assaulted and battered by Daquan Folks a maximum security

inmate level 22 on parole with a history of violence with pending felony assault charges lodged against him.

55.     Assailant Folks was lodged next to plaintiff's cell.

56.     That defendant Marrow immediately determined that plaintiff was a level 6 which would clearly indicated plaintiff was improperly placed at GRVC

57.     Defendants Marrow, Parris and Hernandez failed to intervene to prevent plaintiff's battery.

58.     Upon information and belief, that defendants Captain Marrow, Parris, Hernandez and other correction officers, John Does, failed to conduct a proper and thorough investigation; failed to prosecute the assailant and failed to preserve any and all evidence.

59.     Defendant Marrow spoke briefly with plaintiff on August 12, 2014 and never spoke with him again.  That plaintiff did inform defendant Marrow that he wanted to press charges against the assailant

60.     That plaintiff's injuries were clearly visible as having a deformed face, depressed zygoma - clearly an injury requiring surgery; nevertheless, the plaintiff remained at Rikers Island for at least eight hours before being transferred to Bellevue Hospital.

61.     The Department of Corrections does not have the capability of performing surgery and caused plaintiff to suffer additional pain and suffering.

62.     That plaintiff was caused to have surgery performed on August 18, 2014, to resolve an intra cranial injury - left zygomaticomaxilliary complex fracture, left intra orbital flor fractures - requesting the plates and screws to be placed in plaintiff's left side of his face in various locations.  That plaintiff was handcuffed to his bed while at Bellevue.

63.     That the plaintiff was transferred back to GRVC on August 19, 2014 - the day after the

above complex surgery.

64.   That upon his return plaintiff was forced into a cell in the intake area by two defendant John Does correction officers.

65.   That these two defendant John Does battered the plaintiff by kicking, punching and pushing the plaintiff into said cell.

66.   That said defendant Correction officers forced plaintiff into a cell which had feces smeared all over the walls and no working water.

67.   That the plaintiff was caused to remain in said cell for two nights.

68.   That the defendant John Does intentionally caused plaintiff to suffer through cruel and inhumane treatment and torture.

69.   That the plaintiff was subjected to said inhumane treatment and punishment by defendant Correction Office John Does as they conspired to abuse the plaintiff due to the nature of the original charges against the plaintiff.

70.   That the Department of Correction and defendants Ponte and Canty have no records of the cell number plaintiff was lodged in for two nights.

71.   That upon information and belief, the plaintiff's assault and battery of August 12 was caused by the defendant corrections officers John Does - conspiring to have a gang member and or inmate batter the plaintiff.

72.   That the plaintiff was caused to suffer great pain by the above mentioned defendants and their abuse and conduct toward him.

73.   That on August 21, 2014, the plaintiff was transferred to the infirmary - NIC; but only remained there briefly

74.   A Corrections Officer informed plaintiff that he had been improperly placed and plaintiff

was transferred to what is believed to be the "7" (seven) building where plaintiff was finally placed into protective custody.

75.     Upon information and belief, an investigation and subsequent prosecution of the assailant resulted in a minor infraction with limited segregation; however the plaintiff was never contacted again since the August 12th  consult with defendant Captain Marrow.

76.     That upon information and belief, it is a known practice and documented in numerous articles and investigations that the Department of Corrections correction officers have used gang members and or inmates to carry out hits and/or assault and batteries upon certain inmates.

77.     That defendants Ponte and Canty's failure to have corrections officer present at the location of the assault and battery of the plaintiff thereby violated not only institutional rules, customs, regulations and procedures but the requirements of the New York State Minimum Standards for Protecting Prisoners.

78.     That the defendants were aware of gang membership of the assailant and other inmates at GRVC and their classification.

79.     That the defendants were aware of plaintiff's classification as a minimum security inmate on or before August 12th.

80.     That the defendants Canty and Marrow were aware of plaintiff's classification level 6 thus a minimum security inmate being lodged in GRVC in a cell next to a maximum security prisoner.

81.     That the defendant's including Ponte and Canty improperly and wrongfully placed plaintiff in a dangerous situation at said GRVC.

82.     That the placement of the plaintiff at the GRVC was in violation of institutions rules, regulations and procedures.

83.     As a result of the defendant's conduct and failure to act that the plaintiff, ROBERT

ALLEN, suffered severe physical injuries - most of which are permanent- requiring continued medical attention, pain, suffering and exacerbation of existing injury physical.

84. That the defendants City, and defendants Ponte and Canty are legally responsible for operation of Department of Correction, its facilities - for the condition threat, and the safety of persons confined or incarcerated therein.

85. That a direct and proximate result of defendants actions and omissions to act, Robert Allen was deprived of his rights, privileges and immunities and due process under the Fourth, Eighth and Fourteenth Amendment of the United States Constitution and the laws of the State of New York.

**FOR A FIRST CAUSE OF ACTION LIABILITY
OF DEFENDANT CITY OF NEW YORKFOR
CONSTITUTIONAL VIOLATIONS**

86. Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

87. That the plaintiff's rights have been violated under the Fourth and Eighth and Fourteenth Amendment to the United States Constitution by the Defendant Department of Correction and its defendant employees.

88. The acts complained of were carried out by the aforementioned individual defendants in their capacities as correction officers and officials, wardens, commissioner of corrections, pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Department of Corrections, all under the supervision of ranking officers of said department.

89. Moreover, upon information and belief, the actions of the individual defendants resulted from and were taken pursuant to a de facto policy and/or well settled and widespread custom and practice of the City of New York by its agency the New York City Department of Corrections, which is

implemented by corrections officers of said City and corrections department to summarily and without justification physically assault and batter inmates in the absence of any need to resort to physical force; to allow said officers to use unreasonable violence and force on inmates; to recruit gang members to assault and batter certain inmates, where the defendant's have allowed and permitted high levels of inmate on inmate violence to continue and have taken no steps to alleviate said condition but have sanctioned said policies and customs by the City's acquiescence in said policy and customs which continue to foster and promote a culture of violence therein.

90.     Without limiting the forgoing, the City of New York has specifically failed to terminate said customs policies, usages and policies in the following manner:

a)   Failure to properly train, instruct, review, verify proper assessment of inmates.

b)   Failure to properly train, instruct, and place certain inmates in accordance with their classification and assignment.

c)   Failure to properly assess and verify inmates mental and psychological background.

d)   Failure to properly train, instruct correction officers with regard to request for protective custody.

e)   Permitting the use of unreasonable and excessive force on inmates by other inmate gang members to control, and operate prison facilities.

f)   Permitting corrections officers to utilize unlawful force by gang members to intimidate, and control inmates and assault and batter inmates charged with sex crimes.

g)   Permitting the unlawful and unreasonable use of violence on inmates by other inmates to punish inmates due to the nature of the charges.

h)   Permitting and allowing corrections officers to force alleged unfavorable inmates into intolerable and inhumane cells to punish said inmates.

i)   Permitting the corrections officer to cause inmates to commit unlawful assaults upon other inmates and thereafter failing to conduct meaningful and productive investigations of said assault.

j)      Permitting corrections officers to cause inmates to assault other inmates thereby acquiring  personal favors of correction officers.

k)      Permitting obvious violent assaults to go unreported and or not prosecuted.

l)      Allowing obvious violent assaults with significant injuries – and not prosecuted by law enforcement by permitting a policy where same will be resolved within the Department of Corrections system thereby increasing the violence among inmates.

m)      Failure to properly train, instruct, and discipline supervisory officers with regard to both proper review of injury to prisoners, and conducting appropriate investigation thereof.

n)      Failure to create an objective independent board to investigate the cause of injuries to prisoner(s) and to prevent said assaults from occurring.

o)      Failing to provide a responsive recorded system for inmates to have requests for protective custody recorded and documented promptly.

p)      Failing to provide proper security and safety measures requiring corrections officers to be present at their post as well as problem locations.

91.     Due to unreasonable and overly discretionary classification system, inmates have been misclassified leading to improper placement resulting in excessive inmate on inmate violence.  The continued failure to supervise and train Department of Correction employees and defendants herein to properly classify and reclassify inmates and to monitor same has exacerbated an already inept system. That the defendant City and the defendants herein are well aware of the Department of Correction's classification system and their failure to supervise and monitor same.

92.     The Defendant City is well aware of the high incidents of inmate on inmate violence over the preceding years at the Rikers Island facility especially GRVC facility.   In fact, said violence at GRVC has reached the record high in 2014.

93.     In the year 2014 and prior thereto, there was no surveillance utilized in many GRVC

common areas where it is well known that violence frequently occurs such as the incident occurred herein.

94.     Video surveillance in proper locations would be a major factor in deterring violence between inmates as well as unnecessary use of force by guards.   In this day in age, the failure to have video surveillance is a significant example of the City's failure to take any meaningful steps to alleviate the epidemic levels of violence at Rikers Island Facility including GRVC.  The failure to utilize video surveillance was a conscious decision by defendant City and policy makers to acquiesce in the widespread culture of violence therein.

95.     The defendant City and Department of Corrections supervisors and final decision makers as a matter of de facto policy and widespread culture failed to both accurately report incidents of violence as well as suppress law enforcement prosecution for such crimes, as in the case at bar.  These violent crimes are disposed of within the Rikers Island facility contrary to the wishes and intentions of victims.  Said policy and custom has caused violence to continue and increase.

96.     The fact that the Defendant City has acquiesced in the culture of violence existing at Rikers Island has been depicted in thousands of civil rights cases, new paper articles, 60 Minutes, and multiple news reports. In fact, due to the City's failure to take any positive steps to alleviate the violation of constitutional rights and violence to inmates, the United States Department of Justice did conduct an investigation and found that a deliberate indifference to constructional rights and safety of inmates existed.   The investigation found that a history and culture of violence has existed at Rikers Island. Although the investigation focused on inmates between the ages of 16 and 18yr olds, the investigation suggests that the systemic deficiency identified…. may exist in equal measures at other jails in the Rikers Island Facility.  (See-United States Department of Justice CRIPA Investigation of the NYC Department of Correction Jails on Rikers Island is attached hereto and incorporated herein for

consideration of the amended compliant herein)

97.    The existence of such de facto policies and or well settled and widespread customs and practices has been known to supervisory and policy making officers and officials of the New York City Department of Corrections and the City of New York for a substantial period of time.

98.    Defendant, NYC, and unidentified correction officers who were supervisors and final decision makers, as a matter of policy and practice, have acted with a callous, reckless and deliberate indifference to plaintiff's rights under the Constitution and laws of the United States, in that they failed to adequately discipline, sanction, train, retrain, supervise or otherwise direct correction officers concerning the rights of inmates/citizens, thereby causing the defendant officers in the  above mentioned conduct.

99.    Defendant, NYC, as well as the defendant commissioner and other unidentified correction officers who were supervisors and final decision makers, as a matter of policy and practice, have with deliberate indifference failed to properly train, discipline, sanction and retrain correction officers, despite their knowledge of the recurring problem of violations of the Constitutional rights of inmates by the use of excessive and unreasonable force and by excessive incidents of inmate on inmate violence, said being sanctioned by Department of Corrections employees,   and in so failing, the defendant NYC has caused, encouraged, condoned and allowed the defendants in this case to engage in the aforementioned unlawful conduct without fear of consequences for their illegal acts which did cause the plaintiff to be subjected to deprivations of his civil rights.

100.    That the defendant municipality, NYC, alerted to the high incident of violence emanating from inmate on inmate assaults by repeated complaints alleging lack of both security safety and violation of civil rights, exhibited deliberate indifferences thereto in that it was obvious to NYC that there was not only a need for more and/or improved supervision of correction officers but common sense action to be taken in order to protect against constitutional violations and in spite of repeated complaints of civil rights violations, there have been no meaningful attempts on the part of NYC to

investigate or forestall further incidents.

101.    Defendant City of New York is directly liable and responsible for the acts of defendants because it has repeatedly and knowingly failed to properly supervise, train and discipline said correction officers and because it has failed to take meaningful actions to remedy and prevent constitutional violations. Furthermore, the City has repeatedly and knowing failed to enforce the rules and regulations of the New York City Department of Corrections and the requirements of the New York State Minimum Standards for Protecting Prisoners and the laws of the State of New York and the United States.

102.    The knowing and repeated failure of the defendant(s) City of New York to take any positive steps to alleviate the excessive incidents of violence and properly supervise, train and discipline said officers was proximate cause of the injuries to plaintiff alleged herein.

103.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff.

104.    All of the foregoing acts by defendants deprived plaintiff ROBERT ALLEN of federally protected rights, without due process of law, in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution of the State of New York, including, without limitations, such rights as plaintiff's rights not to be placed in an unwarranted dangerous housing, not to be subjected to unwarranted violent attacks, and not to have cruel and unusual punishment inflicted upon him and to be incarcerated in a safe and reasonable manner,  as well as plaintiff's right to equal protection of law.

105.    As a result of the defendants' conduct, plaintiff ROBERT ALLEN suffered permanent physical injury requiring surgery and future medical care, and was otherwise harmed, damaged and injured.

### AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF, ROBERT ALLEN
### VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO
### 42 U.S.C. §1983

106.    Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

107.    That the defendants' conduct and failure to act, acting under color of law, in permitting the assault by and use of excessive force on the plaintiff without justification was done with a deliberate indifference and/or a reckless disregard for the natural and probable consequences of said defendant's act and failure to act.

108.    Defendants Correction Officers of the New York City Department of Corrections under color of state law and acting without justification, subjected plaintiff to assault and excessive force as well as said conspiracy, acts, and omissions to act without due process of law and in violation of 42 U.S.C. §1983 thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, including, without limitations, deprivation of the following constitutional rights, privileges and immunities:

      (a)    Plaintiff was deprived of his First Amendment right to speak freely and to petition the government for redress of grievances;

      (b)    Plaintiff was deprived of his Fourth Amendment constitutional right to be free from unreasonable seizures of his person;

      (c)    Plaintiff was deprived of his Fourth Amendment right to be free from the use of excessive or unreasonable force;

      (d)    Plaintiff was deprived of his Eighth and Fourteenth Amendment not to be subjected to cruel and criminal punishment;

(e)   Plaintiff was deprived of his Fourteenth Amendment right to both equal protection of law and due process of law;

109.   As a result of the defendants' conduct, plaintiff ROBERT ALLEN suffered permanent physical injury requiring surgery and future medical care, and was otherwise harmed, damaged and injured.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF, ROBERT ALLEN**
**VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO**
**42 U.S.C. §1983 AND THE USE**
**OF EXCESSIVE AND UNREASONABLE FORCE**

110.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

111.   That the plaintiff's rights have been violated under the Fourth and Eighth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. §1983, in that plaintiff was unlawfully subjected to excessive and unreasonable force, by the defendants Correction Officers JOHN DOES and other defendant corrections officers who either intentionally, recklessly or negligently caused another inmate to assault and batter plaintiff.

112.   That the said assault and battery of the plaintiff was effected by defendants without authority of law and without any reasonable necessity to use any force much less the excessive force that they employed and the force employed was used without legal justification, without plaintiff's consent, with malice and with an intent to inflict pain and suffering.

113.   As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution being more particularly plaintiff's rights to be free from the use of excessive and unreasonable force.

114.     That all the defendants who witnessed the use of excessive force against the plaintiff and who had a reasonable opportunity to intervene and prevent his being injured and/or injured further and who failed to do so are liable to the plaintiff via their failure to exercise their affirmative duty to intervene.

115.     That by reason of the unlawful use of excessive and unreasonable force, the plaintiff was harmed physically, requiring him to be hospitalized, surgery was performed, plaintiff was left with permanent injury, and he was subjected to physical pain, anxiety, subjected to cruel and unusual punishment, and that he was subjected to various ongoing physical.

**AS AND FOR A FOURTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFF, ROBERT ALLEN
VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO
42 U.S.C. §1983 AND  DELIBERATE INDIFFERENCE TO
THE CONSTITUTIONAL RIGHT OF PLAINTIFF**

116.     Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

117.     That the defendants were aware of a substantial risk of inmate attacks toward plaintiff and other inmates similarly situated.

118.     The defendants were aware of plaintiff being a vulnerable inmate given Department of Correction's assessment and plaintiff's classification level of 6 thus a minimum security inmate.

119.     The defendants Ponte, Canty, and other defendants were aware that the plaintiff was a minimum security inmate (level 6) being housed with maximum security inmates thus creating a substantial risk of attack and injury to plaintiff and other inmates similarly situated.

120.     That the defendant Ponte and Canty and other defendants were aware that due to the lack of video surveillance and high incidents of violence at GRVC that there were a substantial risk that

plaintiff and other inmates similarly situated would be attacked and injured.

121.    That the defendants Ponte and Canty and other defendants were aware of the maximum classification and violent background of the other inmates in GRVC at plaintiff's location.

122.    That defendant Hernadez was aware that by leaving his post that he created a substantial risk that plaintiff would be attacked and harmed

123.    That the defendants Ponte and Canty knew that defendants and other correction officers left their post without coverage and that this practice created a substantial risk of assault and harm to plaintiff and other inmates similarly situated.

124.    The defendants placed plaintiff in a facility which has a violent gang population as well as violent inmates population.

125.    The defendants were aware that they were missing defendant corrections officers limiting their ability to stop, detain and intervene to prevent inmate attack.

126.    That the defendants Ponte and Canty and other defendants were aware of procedures and remedies to be employed to monitor the activity of inmates in order to prevent attack upon fellow inmates.

127.    That the defendants Ponte and Canty and other defendants, did not employ said procedures, and remedies although said procedures and remedies were obvious and in accordance with general penalogical procedures.

128.    That defendants Ponte and Canty and other defendants ignored the requirements of the New York State Minimum Standards for Protecting Prisoners thereby creating substantial risk or harm to plaintiff or inmates similarly situated.

129.    The defendant's failure to provide additional correction officers to watch or have other means to protect plaintiff from violence by fellow inmates and their failure to place plaintiff properly

and their failure to follow the rules, and regulations and procedures of not only Department of Corrections,  but also the New York State Minimum Standards for Protecting Prisoners thereby constituting deliberate indifference to the constitutional rights of individual who are incarcerated and under control of the defendants including the plaintiff.

130.    As a result of the defendant's deliberate indifference, the plaintiff was subjected to assaults, cruel and unusual punishment, all in violation of Eighth and Fourteenth Amendment to the Constitution and 42 U.S.C. 1983 and plaintiff suffered physical injury, which is permanent in nature, surgeries and requiring future medical treatment.

**AS AND FOR A SEVENTH  CAUSE OF ACTION
ON BEHALF OF PLAINTIFF,
ASSAULT AND BATTERY**

131.    Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

132.    By the actions described above, the defendants, acting individually and in concert with each other, while in the scope of their employment, maliciously, willfully and intentionally committed assault and battery upon the plaintiff, with apparent ability and objective to cause imminent harm and offense bodily harm and subjected plaintiff to physical injury and harm and embarrassment and humiliation.  The defendant's intentional willfully and maliciously battered plaintiff, when they, in a hostile and offensive manner struck plaintiff without his consent and with the intentions of causing harmful and/or offensive bodily contact to the plaintiff and caused such battery.  The acts and conduct of the defendants was the direct and proximate cause of injury and damage to plaintiff and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York.

133.    As a result of the foregoing, plaintiff was subject to cruel and unusual punishment and

was otherwise harmed, damaged and injured.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF, ROBERT ALLEN
## NEGLIGENCE

134.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in

the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

135.   Defendants, by their aforementioned acts, negligently failed to use due care in the performance of

their duties in that they, among other negligent acts:

(a)      failed to perform their duties as a reasonably prudent and careful

corrections officers would have done under similar circumstances,

including (but not limited to) the use of excessive unreasonable force,

conducting an unlawful seizure; physically assaulting a person; and subjecting

plaintiff to cruel and unusual treatment and other acts which a correction officer

of ordinary prudence would not have done;

(b)      failed to perform their duties as reasonable and prudent correction officers

where the rules and regulations and procedures concerning assessment

classification and subsequent placement of plaintiff were not followed.

(c)      failed to perform their duties as reasonable and prudent officers where

given the facts herein no correction officer intervened to stop the assault(s)

upon plaintiff.

(d)      Defendants hired and retained incompetent and unfit correction officers

whom they knew, or should have known, possessed dangerous

propensities as well as  a propensity to use or cause unreasonable

excessive force to be use against an alleged undesirable inmate such as

plaintiff.

(e)      failed to place inmate, plaintiff herein, in protective custody upon several

requests by plaintiff and his attorney's request.

(f) failed to properly institute safety procedures where all corrections officers are in the locations and positions to provide a safe and secure environment;

(f) failed to establish meaningful procedures requiring that the rules, regulations and procedures for corrections officers are followed and abided by said rules and regulations for disciplining correction officers and other personnel who have engaged in such acts of misconduct.

(h) failed to provide appropriate safeguards to alleviate inmate abuse, assaults by correction officers, assaults by gang members sanctioned by defendant Correction Officers;

(i) failed to take necessary steps to protect the plaintiff who was a "vulnerable inmate".

(j) failed to provide a safe environment where said defendants negligently did not follow the rules, regulations and procedures for said Department of Corrections.

(k) failed to provide proper and precautious supervision and safeguards to assure the safety of the plaintiff herein.

(l) failed to institute procedure and regulations requiring review and verification of assessments, classifications and proper placement.

(m) failed to have video surveillance in GRVC and in the common areas thereof.

(l) failed to follow the requirements of the New York State Minimum Standards for Protection of Prisoners and other general accepted penalogical procedures and safeguards

136. All of these acts and/or omissions to act were performed without any negligence on the part of the plaintiff and were the proximate cause of injuries to him.

137.    As a result of the aforementioned incident(s), caused solely by the negligence, cruelness, recklessness of defendants corrections officers, while they were acting within the scope of their employment by the city of New York, plaintiff has been seriously and permanently injured, has been scarred and disfigured for life, has suffered nerve damages, cervical damage resulting in severe pain and disability.

138.    Given the aforementioned practice, customs, policies and usages and the defendant's negligence herein, the plaintiff's injuries as a result of said assault was reasonably foreseeable.

139.    As a result of the foregoing, plaintiff was deprived of his constitutional rights, sustained permanent physical injury, surgery and probable future medical and dental procedures and/or surgeries.

**AS AND FOR A NINTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF,**
**NYS CONSTITUTIONAL VIOLATIONS**

140.    Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

141.    Defendants subjected plaintiff to the foregoing conspiracies, acts, and omissions to act without due process of law, thereby depriving plaintiff of rights, privileges and immunities secured by Article 1, §§5, 6, 8, 9, 11 and 12 of the New York State Constitution, including, without limitation, the following deprivations of his rights, privileges and immunities:

    (a)    Plaintiff was deprived of his rights to speak freely and to petition the government
           for redress of grievances, in violation of §§ 8 and 9 of the Constitution of the
           State of New York;

    (b)    Plaintiff was deprived of his rights to be free unreasonable seizures of his person;
           in violation of § 12 of the Constitution of the State of New York;

    (c)    Plaintiff was deprived of his rights to be free from the use of excessive or

unreasonable force in the course of an unlawful seizure, in violation of § 12 of the Constitution of the State of New York;

(d)    Plaintiff was subjected to cruel and criminal punishment, without due process of law, in violation of the Constitution of the State of New York;

142.   As a result of the defendants' conduct, ROBERT ALLEN suffered physical injured, sustained and was otherwise harmed, damaged and injured.

### AS AND FOR A TENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF, LORENZO STEELE
### NEGLIGENCE HIRING, SCREENING, RETENTION,
### SUPERVISION AND TRAINING

143.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

144.   The defendant, CITY OF NEW YORK negligently hired, screened, retained, supervised and trained the defendants commissions, wardens, captains and other defendant officers. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff, ROBERT ALLEN, and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York, and as the defendant CITY OF NEW YORK is the employer of each defendant, defendants NEW YORK CITY DEPARTMENT OF CORRECTIONS AND ITS COMMISSIONER PONTE, WARDEN CANTY, CAPTAIN MARROW, CAPTAIN NAUGHTON, CORRECTIONS OFFICER CAPTAIN MARROW, CORRECTIONS OFFICER PARRIS, CORRECTION OFFICER HERNANDEZ, CORRECTION OFFICER PAIGE, CORRECTION OFFICER CALABRESE, , and the CITY OF NEW YORK is liable to plaintiff for negligent, hiring, screening, retention, supervision and training.

145.   As a result of the foregoing, plaintiff was permanently injured, and was otherwise harmed, damaged and injured.

## VICARIOUS LIABILITY

146.    Plaintiff incorporates by reference the allegations set forth in each preceding paragraph of this complaint as if fully set forth herein.

147.    The defendants corrections officers of the NYC Department of Corrections an agency of the Defendant City of New York were negligent in their care and supervision and placement of plaintiff and assaulted plaintiff and use of excessive force upon plaintiff; therefore under doctrine of vicarious liability, the defendant City of New York is libel for all acts occurring after and during the negligence and unlawful battery and use of excessive force.

148.    As a result of the foregoing, plaintiff was permanently injured and surgical intervention was required and plaintiff suffered other physical injuries, pain and suffering, and was otherwise harmed, damaged and injured.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all of the defendants:

A.    Compensatory damages   $5,000,000;

B.    Punitive damages 5,000,000;

C.    The convening and empaneling of a jury to consider the merits of the claims herein;

D.    Costs and interest and attorney's fees;

E.    Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:        New York, New York
              June 9, 2016

                                    EDWARD ZALOBA
                                    118-21 Queens Boulevard, Ste. 504
                                    Forest Hills, NY 11375
                                    (718) 261-3000